Frederic P. HOLBROOK, Trustee in Bankruptcy of the Estate of Mitchell H. Hewitt, bankrupt, Appellant,

v.

UNITED STATES of America, Appellee.

No. 16704.

United States Court of Appeals Ninth Circuit.

Nov. 30, 1960.

Edwards & Edwards, Lee Edwards, Eleanor Edwards, Seattle, Wash., for appellant.

Charles K. Rice, Asst. Atty. Gen., Lee A. Jackson, Robert N. Anderson, Arthur I. Gould, Attys., Dept. of Justice, Washington, D. C., Charles P. Moriarty, U. S. Atty., Seattle, Wash., for appellee.

Before STEPHENS and HAMLEY, Circuit Judges, and EAST, District Judge.

STEPHENS, Circuit Judge.

On November 23, 1948 and January 1, 1949, Internal Revenue taxes were seasonably assessed by the United States against Mitchell H. Hewitt, subsequently a bankrupt. These taxes had not yet been collected when bankruptcy was adjudicated on October 1, 1957, and a claim was thereafter made by the government upon the bankrupt's estate. The Referee disallowed the claim but was reversed on review by the District Court. The trustee in bankruptcy appeals from the District Court's decision.

Allowance or disallowance of appellee's claim depends upon the validity of a tax collection waiver signed and delivered by the bankrupt on July 22, 1954, extending the time for collection of his tax liabilities until December 31, 1960. We are governed by the Internal Revenue Code of 1939, see 1954 I.R.C. § 7851(a)(6), 26 U.S.C.A. § 7851(a) (6). The pertinent provision thereof reads as follows:

"§ 276 * * *

"(c) Collection after assessment. Where the assessment of any income tax imposed by this chapter has been made within the period of limitation properly applicable thereto, such tax may be collected by distraint or by a proceeding in court, but only if begun (1) within six years after the assessment of the tax, or (2) prior to the expiration of any period for collection agreed upon in writing by the Commissioner and the taxpayer before the expiration of such six-year period. The period so agreed upon may be extended by subsequent agreements in writing made before the expiration of the period previously agreed upon."

Appellant argues that the Commissioner's agreement in writing to a taxpayer's waiver postponing the deadline for collection of assessed taxes is a prerequisite to its validity under the Code provision above quoted, and that neither the Commissioner nor anyone acting on his behalf expressed written agreement to the bankrupt's waiver before the expiration of the applicable six-year periods on November 23, 1954 and January 1, 1955. The District Court ruled that although the Commissioner had not signed the waiver within the allotted time, his failure to agree in writing did not render the waiver ineffective. Consequently, the court held that the government's claim was not barred by the statute of limitations and should not have been disallowed.

The contention put forward by appellant is one which has plagued this court before. We have held consistently that the Commissioner's consent or agreement in writing is not indispensable to the validity of a tax collection waiver executed by the taxpayer under Revenue Act provisions to which § 276(c) is the successor and from which, the parties apparently agree, it cannot be distinguished.[1] Com-

---

[1]. The evolution of § 276(c), 26 U.S.C.A. § 276(c) can be traced as follows:

Section 250(d) of the Revenue Act of 1921, 42 Stat. 265, provided that, "The amount of * * * taxes due * * * shall be determined and assessed within five years after the return was filed, unless both the Commissioner and the taxpayer consent in writing to a later determination, assessment, and collection of the tax; * * *."

The Revenue Act of 1924 did not permit a waiver of the time within which taxes had to be collected. But § 278(c), 43 Stat. 300, 26 U.S.C.A. Int.Rev.Acts, provided that, "Where both the Commissioner and the taxpayer have consented in writing to the assessment of the tax after the time prescribed * * * for its assessment the tax may be assessed

missioner of Internal Revenue v. Hind, 9 Cir., 1931, 52 F.2d 1075; McCarthy Co. v. Commissioner, 9 Cir., 1935, 80 F.2d 618, 620; Crown Willamette Paper Co. v. McLaughlin, 9 Cir., 1936, 81 F.2d 365, 368. See also John M. Parker Co. v. Commissioner, 5 Cir., 1931, 49 F.2d 254, 256. Other courts have not been in accord. Commissioner of Internal Revenue v. United States Refractories Corp., 3 Cir., 64 F.2d 69, affirmed without opinion by an equally divided court, 1933, Helvering v. United States Refractories Corp., 290 U.S. 591, 54 S.Ct. 94, 78 L.Ed. 521; United States v. Bertelsen & Petersen Engineering Co., 1 Cir., 1938, 95 F.2d 867; S. S. Pierce Co. v. United States, 1 Cir., 1937, 93 F.2d 599; Atlantic Mills of Rhode Island v. United States, 1933, 3 F. Supp. 699, 78 Ct.Cl. 219; J. T. Sneed, Jr., 1934, 30 B.T.A. 1121; American Railways Co., 1934, 30 B.T.A. 939; Corn Products Refining Co., 1931, 22 B.T.A. 605; Melville W. Thompson, 1930, 18 B.T.A. 1192; Chadbourne & Moore, 1929, 16 B.T.A. 961. Despite such an accumulation of contrary authority, and for the reasons which follow, we adhere to our ruling in Commissioner of Internal Revenue v. Hind, supra.

The setting for the difference of opinion noted above was provided by the Supreme Court in Florsheim Bros. Drygoods Co. v. United States, 1930, 280 U.S. 453, 50 S.Ct. 215, 74 L.Ed. 542, and Stange v. United States, 1931, 282 U.S. 970, 51 S.Ct. 145, 75 L.Ed. 335. In Florsheim the taxpayer urged that a waiver signed by both taxpayer and Commissioner under § 250(d) of the Internal Revenue Act of 1921, see note 1, supra, constituted a contract binding upon the government, for otherwise Congress would not have called for the written consent of the Commissioner. The Court rejected this argument, holding that waivers under § 250(d) were not contracts. The requirement in the statute that the Commissioner consent in writing does not imply that the lawmakers intended a contract to result. If a purpose for the Commissioner's consent must be shown, it "exists in the general desirability of the requirement as an administrative matter." 280 U.S. at page 466, 50 S.Ct. at page 219. In Stange, the Court again dealt with a waiver executed by both the taxpayer and the Commissioner under the 1921 Act, and again declared, "As pointed out in [Florsheim], a waiver is not a contract, and the provision requiring the Commissioner's signature was inserted purely for administrative purposes and not to convert into a contract what is essentially a voluntary, unilateral waiver of a defense by the taxpayer." 282 U.S. at page 276, 51 S.Ct. at page 147. See also Aiken v. Burnet, 1931, 282 U.S. 277, 281, 51 S.Ct. 148, 75 L.Ed. 339; Burnet v. Chicago Ry. Equipment Co., 1931, 282 U.S. 295, 298, 51 S.Ct. 137, 75 L.Ed. 349.

With these statements in mind we decided Commissioner of Internal Revenue

---

at any time prior to the expiration of the period agreed upon."

The Revenue Act of 1926 brought back a provision dealing with a waiver of the statute of limitations upon the collection of taxes. Section 278(d), 44 Stat. 59, 26 U.S.C.A. Int.Rev.Acts, provided that, "Where the assessment of any * * * tax imposed by this title * * * has been made * * * within the statutory period of limitation properly applicable thereto, such tax may be collected by distraint or by a proceeding in court * * *, but only if begun (1) within six years after the assessment of the tax, or (2) prior to the expiration of any period for collection agreed upon in writing by the Commissioner and the taxpayer."

The Revenue Act of 1928 amended the proviso numbered (2) in § 278(d) of the 1926 Act to read, "(2) prior to the expiration of any period for collection agreed upon in writing by the Commissioner and the taxpayer before the expiration of such six-year period. The period so agreed upon may be extended by subsequent agreements in writing made before the expiration of the period previously agreed upon." See 45 Stat. 870, 26 U.S.C.A. Int.Rev.Acts. Section 278(d) of the 1926 Act, as amended by the 1928 Act, is for all practical purposes identical with § 276(c) of the 1939 Code.

v Hind, supra.[2] We were there faced, as the Supreme Court in Stange and Florsheim was not, with a waiver to which the Commissioner had not consented in writing, and with the argument that because of the Commissioner's omission, the waiver was ineffective. Assuredly, the Commissioner's written consent was required by the statute. But, we ruled, the fact that consent was required did not mean that a waiver without it was invalid. The purpose of the statutory requirement was administrative; to provide for the proper, orderly and prompt conduct of business. We reasoned that neither the rights of the taxpayer nor the interests of the public would be injuriously affected by the Commissioner's failure to sign the taxpayer's waiver of the statute of limitations within which the government might collect outstanding taxes. In consequence, applying a traditional canon of statutory construction, we deemed the requirement that the Commissioner consent in writing directory rather than mandatory, and concluded that although the requirement had been disregarded, the waiver filed by the taxpayer was nonetheless valid and effective. See French v. Edwards, 1871, 13 Wall. 506, 511, 80 U.S. 506, 511, 20 L.Ed. 702; Erhardt v. Schroeder, 1894, 155 U.S. 124, 129, 15 S.Ct. 45, 39 L.Ed. 94; United States v. Maney, 7 Cir., 1927, 21 F.2d 28, 29, all relied on in Hind. Our subsequent decisions in McCarthy Co. v. Commissioner, supra, and Crown Willamette Paper Co. v. McLaughlin, supra, reiterated our earlier conclusion without extension or discussion of the reasoning by which it was reached.

Hind went not long unchallenged. In March, 1933, the Third Circuit handed down its opinion in Commissioner of Internal Revenue v. United States Refractories Corp., 64 F.2d 69. The taxpayer had there executed a waiver under § 278 (d) of the Internal Revenue Act of 1926, see note 1, supra, containing a reservation by the taxpayer of all rights which it might have had under the 1921 Act with its five-year statute of limitations for the collection of taxes. The waiver had been executed after the five-year period had terminated, and by its reservation the taxpayer sought to preclude the application of the six-year limitation period which became law with the passage of the 1926 Act. The Commissioner did not sign the waiver in question, and the court held in consequence that it could have no effect.

The court conceded that a waiver even when signed by both taxpayer and Commissioner did not constitute a contract between them. Even so, the requirement that the Commissioner consent in writing was made for some purpose. This purpose, said the court, might well be to prove that the terms of a waiver are those to which both taxpayer and Commissioner agreed. Or perhaps Congress may have wished to protect the Commissioner from falling prey unknowingly to the terms which a taxpayer might impose in a waiver, the taxpayer's ability to impose such terms arising from the fact that, in the court's eyes, he could force the Commissioner to bargain for an extension of the limitation period. The Commissioner's consent thus prevents the execution by taxpayers of waivers which waive nothing and precludes the combination of the Commissioner's delay in collection and his ignorance of the terms of a waiver from resulting in the loss of the tax to the government. On these grounds and despite its awareness of our decision in Hind, the court held that a waiver without the Commissioner's written agreement is void and ineffective.

The same result was reached in Atlantic Mills of Rhode Island v. United States, decided by the Court of Claims in June, 1933, and reported at 3 F.Supp. 699, 78 Ct.Cl. 219. There the waiver the validity

2. Prior to our decision in Hind, the Board of Tax Appeals had thrice reached the contrary conclusion, albeit without edifying discussion. See Chadbourne & Moore, 1929, 16 B.T.A. 961; George U. Hind, 1929, 18 B.T.A. 96, reversed sub nom. Commissioner of Internal Revenue v. Hind, 9 Cir., 1931, 52 F.2d 1075; Melville W. Thompson, 1930, 18 B.T.A. 1192.

of which was challenged contained a proviso attempting to limit in duration the effect of previous waivers embodying the taxpayer's agreement to an unlimited postponement of the statute of limitations for assessment. The statute involved was § 250(d) of the 1921 Act, see note 1, supra, and the court held the waiver invalid because it had not been signed nor consented to in writing by the Commissioner. As in Commissioner of Internal Revenue v. United States Refractories Corp., supra, the court conceded that the Commissioner's consent would not create a contract and was required for administrative purposes. If, however, a waiver were valid without the Commissioner's signature, hypothesized the court, all kinds of terms could be included in waivers filed by taxpayers and the Commissioner would not know which waivers could be relied upon. Uniformity would be absent, confusion would ensue and the orderly administration of the taxing statutes would be made more difficult. Accordingly, the court ruled that the taxpayer's waiver was void and specifically noted its inability to concur with our decision in Hind.

Then, in October, 1933, an equally divided Supreme Court affirmed without opinion the Third Circuit's decision in Commissioner v. United States Refractories Corp., supra. 290 U.S. 591, 54 S.Ct. 94, 78 L.Ed. 521. Three months later, however, in R. H. Stearns Co. v. United States, 1934, 291 U.S. 54, 54 S.Ct. 325, 78 L.Ed. 647, the Court declared, "For the decision of this case we do not need to rule whether a 'waiver' by a taxpayer consenting to the enlargement of the time for assessment or collection is ineffective unless approved by the Commissioner in writing." 291 U.S. at page 59, 54 S.Ct. at page 327. And in a footnote, the Court invited a comparison of United States Re-

fractories and Atlantic Mills on the one hand, with Hind and John M. Parker Co. v. Commissioner, supra, on the other. The apparent disinclination of the Court to rely in Stearns upon its affirmance of United States Refractories takes from the latter whatever value it might have had as compelling precedent. We do not feel bound to follow United States Refractories in the present case.[3]

One other case is deserving of more than passing mention.[4] In Corn Products Refining Co., 1931, 22 B.T.A. 605, the Board of Tax Appeals was confronted with the question of the validity and effectiveness of a waiver signed by the taxpayer but not by the Commissioner, and it concluded, approximately nine months before our ruling in Hind, that a waiver not consented to in writing by the Commissioner could have no effect. The Board accepted the proposition that the Commissioner's consent was required for administrative reasons, but held that it was required nonetheless and couldn't be ignored. The Board analogized a waiver of the statute of limitations with a compromise of tax liabilities and declared that since a compromise was invalid without the statutorily required consent of the Secretary of the Treasury, see Botany Worsted Mills v. United States, 1929, 278 U.S. 282, 49 S.Ct. 129, 73 L.Ed. 379, a waiver would be similarly invalid without the Commissioner's written consent. The Board noted, however, that "the real question is whether the statute is directory or mandatory, not whether it is administrative or not." 22 B.T.A. at page 624. For an administrative requirement could well be mandatory. In determining whether Congress intended a mandatory or a directory construction, the Board reasoned that if the Legislature had not meant to pin the effectiveness of a waiver upon the Commissioner's

---

3. The District Court was correct in assuming that we were aware of the United States Refractories affirmance when we decided McCarthy Co. v. Commissioner, supra, in accordance with our position in Hind. See Brief for Petitioner, McCarthy Co. v. Commissioner, 9 Cir., 1935, 80 F.2d 618, at p. 16.

4. S. S. Pierce Co. v. United States, supra, and United States v. Bertelsen & Petersen Engineering Co., supra, both followed the reasoning in United States Refractories and Atlantic Mills. The Board of Tax Appeals decisions in American Railways Co., supra, and J. T. Sneed. Jr., supra, are not helpful.

consent, it would not have modified the common law waiver rule. At common law the taxpayer's waiver of the statute of limitations was perfectly valid regardless of the Commissioner's position. In conclusion the Board stated, "We think that an instrument of such significance and importance which so affects the substantial rights of both the Government and taxpayer and which is necessary in order to enable the Commissioner to perform his public duty of collecting taxes, should be in the form prescribed by the statute and that the statutory provisions relating thereto are mandatory." 22 B.T.A. at page 626.

■ The decisive question is indeed whether the requirement that the Commissioner consent or agree in writing to a taxpayer's waiver is mandatory or directory. Neither party has cited nor have we been able to find any legislative history which would evidence Congress' intent in 1921 or at any time thereafter up to and including the enactment of the 1939 Code. We do not think the fact that § 250(d) of the 1921 Act modified the common law by requiring the Commissioner to consent to waivers leads unerringly to the conclusion that Congress intended the requirement to be mandatory. It is equally possible that in changing the existing law Congress desired to instruct the Commissioner as to the best way to administer taxpayers' waivers, for the common law did not offer the benefits of such instruction. That is to say, we do not believe that because the 1921 Act added a requirement not called for by the common law, the requirement was meant to be mandatory. For both a mandatory and a directory construction are consonant with the statutory addition.

■ In the absence of direct evidence of legislative intent, a significant consideration in determining whether a statutory requirement should be given mandatory or directory effect is a comparison between the results to which each such construction would lead. See, e. g., John C. Winston Co. v. Vaughan, D.C.W.D.Okl. 1935, 11 F.Supp. 954, 959–960, affirmed 10 Cir., 1936, 83 F.2d 370; Hollingsworth

v. Koelsch, 1955, 76 Idaho 203, 280 P.2d 415, 418; Zbinden v. Bond County Community Unit School Dist. No. 2, 1954, 2 Ill.2d 232, 117 N.E.2d 765, 767; 3 Sutherland, Statutory Construction, § 5806 (3d ed. 1943). If a waiver of the statute of limitations for the collection of taxes is valid and effective without the Commissioner's written consent, are either the rights of taxpayers or the interests of the government injured or jeopardized? And, on the other hand, how would such rights and interests fare under a mandatory reading of the provision? The gist of our decision in Hind was that neither the rights of taxpayers nor the interests of the government in the collection of taxes could be injured by holding the requirement that the Commissioner consent to collection waivers in writing directory and of no effect on the validity of a waiver. The gist of those decisions contrary to Hind is just the opposite; that unless the consent requirement is read as mandatory, the rights of the taxpayer or the interests of the public will be injured.

A look at the reasons which led to the Third Circuit's decision in United States Refractories and to the conclusion of the Court of Claims in Atlantic Mills, makes it apparent that the Commissioner's written consent was deemed necessary more to protect the interests of the government in the collection of taxes than to safeguard the rights of the taxpayer. The Third Circuit feared that if a waiver were valid without the Commissioner's consent, taxpayers could impose terms in their waivers as to which the Commissioner would be ignorant, and that the Commissioner, trusting that the waivers really waived something, would delay collecting taxes until the statutory period had expired. He might then realize too late that the taxpayer had waived nothing, and the government would lose taxes to which it otherwise would be rightfully entitled. Similarly, in Atlantic Mills, the court was concerned lest the Commissioner, if his consent were not essential to the effectiveness of a waiver, would be the victim of all sorts of terms and conditions imposed in waivers by taxpayers.

and would not know upon which waivers he could rely. This apprehension that the Commissioner would be misled by taxpayers whose waivers were either conditional or meaningless also underlies the decisions in S. S. Pierce Co. v. United States, supra, and United States v. Bertelsen & Petersen Engineering Co., supra. See note 4, supra.

■ ■ We do not deny that if the requirement of the Commissioner's consent in writing is construed as directory, the Internal Revenue people might conceivably be more prone to let waivers go unread and consequently increase the chances of incurring a loss of revenue through reliance on a non-waiving waiver. We are not aware, however, that the Commissioner has in practice ever lost a tax because he relied on a misleading or meaningless waiver. On the other hand, most of the cases which disagree ·with Hind are concrete examples of how the interests of the government may be injuriously affected by a mandatory reading of the statute. For in those cases, with the exception of Atlantic Mills, the Commissioner was attempting to rely on waivers to which he had not consented and was prevented from collecting the taxes by the court's mandatory construction of the requirement of consent. The taxpayers received a windfall benefit from the Commissioner's omission, and the government suffered a loss of revenue. In Atlantic Mills, the taxpayer had already waived the statute of limitations for an unlimited duration and then by means of a waiver to which the Commissioner did not consent it attempted to place a time limit on its previous waivers. In order to avoid the restrictions which the unsigned waiver placed upon the duration of the effectiveness of the taxpayer's previous waivers, the government unfortunately argued that the waiver was invalid without the Commissioner's written agreement. But assuredly a valid waiver cannot grant to the waiving party rights which he no longer has. As the Supreme Court has said, the waiver called for by the statute is a voluntary, unilateral abandonment of a defense by the taxpayer; it is not a

unilateral assumption of rights which the taxpayer has previously abandoned. The Commissioner would not have been bound by the waiver held invalid in Atlantic Mills, for the Commissioner cannot be bound even when he expresses written consent. He could have relied upon the previous waivers which the taxpayer had executed and ignored the latter's attempt to limit them. The Atlantic Mills situation was thus not one where a directory reading of the statute would have injured the government's position.

■ ■ Indeed, the fact that the Commissioner is not bound by the terms of a waiver of the statute of limitations distinguishes the waiver situation from that of a compromise of tax liability. Where a compromise is concerned, the assent of the Secretary of the Treasury binds the government, consequently the requirement of such assent is mandatory. Any other construction would be highly injurious to the public interest. But, it should be noted, when the taxpayer submits an offer of compromise and agrees to suspend the statute of limitations for the period during which the government is considering the compromise terms, the taxpayer's waiver of the time limit is valid and binding upon him even though the government subsequently rejects the offer of compromise. And the government need not consent to the postponement of the statutory time limit unless the instrument of waiver specifically says so. See Shambaugh v. Scofield, 5 Cir., 1952, 132 F.2d 345; United States v. Dickerson, D.C.E.D.Mo.1951, 101 F.Supp. 262, 269–270. Compare United States v. Bank of Commerce, D.C.W.D.Tenn.1940, 32 F.Supp. 942, 946–947, affirmed per curiam, 6 Cir., 1941, 124 F.2d 187, with Joyce v. Gentsch, 6 Cir., 1944, 141 F.2d 891. The analogy suggested in Corn Products Refining Co., supra, is thus unpersuasive.

■ ■ In sum, we think that the possibility that the public interest will be jeopardized by a directory reading of § 276(c) is more fancied than real. Yet the injury to the public interest which results from a mandatory construction of the statute is

demonstrable from decided cases. Since we can ascertain no way in which a mandatory reading of the provision would better safeguard a taxpayer's rights, we conclude that the requirement that the Commissioner agree in writing to a waiver executed by the taxpayer pursuant to § 276(c) of the 1939 Code is directory and that the waiver in this case is both valid and effective according to its terms despite the apparent absence of the Commissioner's agreement in writing. Since the trustee in bankruptcy can stand in no better position than the taxpayer insofar as the claim here made by the United States is concerned, the decision of the District Court must be sustained.

Affirmed.